UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

CLIFTON R. HOWARD, JR.,

    Plaintiff,

vs.

UNITED STATES OF AMERICA,
through its agency, U.S. DEPARTMENT
OF VETERANS AFFAIRS,

    Defendant.
_____/

**COMPLAINT FOR DAMAGES
UNDER FEDERAL TORT CLAIMS ACT**

    Plaintiff, CLIFTON R. HOWARD, JR. ("Howard"), by and through his undersigned counsel, hereby files this Complaint against Defendant, UNITED STATES OF AMERICA, through its agency, U.S. DEPARTMENT OF VETERANS AFFAIRS ("Veterans Affairs"), and alleges as follows:

**JURISDICTION, VENUE AND CONDITIONS PRECEDENT**

    1.    Plaintiff, Howard, is a resident of the Southern District of Florida, and is otherwise *sui juris*.

    2.    This is an action against Defendant, UNITED STATES OF AMERICA ("United States"), acting through its agency, U.S. DEPARTMENT OF VETERANS AFFAIRS ("U.S. Dept. of Veterans Affairs"), pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. and 28 U.S.C. § 1346(b)(1).  The lawsuit involves claims for professional medical negligence in connection with medical care provided to Plaintiff,

Howard, by the U.S. Dept. of Veterans Affairs at the Veterans Affairs Hospital and Medical Offices located at 1201 N.W. 16th Street, Miami, FL 33125.  Jurisdiction is proper under 28 U.S.C. § 1346(b)(1).  At all times material hereto, Howard was a patient at the U.S. Dept. of Veterans Affairs facility.

3.  The lawsuit involves a claim for money damages and compensation in excess of $75,000.00, as more fully stated in Plaintiff's federal tort claim compliance documentation, because of the wrongful acts and omissions of the U.S. Dept. of Veterans Affairs through its doctors, nurses, health care employees and agents.  (See Exhibit 1, the Standard Form 95, which is attached hereto inclusive of all information originally included therein).

4.  The lawsuit is against the United States because, under the circumstances related hereto, its agency, the U.S. Dept. of Veterans Affairs, caused Plaintiff to be seriously and permanently injured due to medical negligence and because, under the circumstances applicable, Defendant would be liable to Plaintiff if it were a private person pursuant to the substantive laws of the state of Florida.

5.  Venue related to this lawsuit is proper in the Southern District of Florida in that all of the acts and/or omissions forming the basis of this claim occurred in South Florida.  As more fully stated hereinafter, Howard presented to the VA hospital in Miami-Dade County with a bone infection which went negligently undiagnosed and/or improperly diagnosed as other ailments.  Such conduct, and the resulting failure to administer proper medical testing and treatment, resulted in the serious progression of the infection and the eventual amputation of Howard's left leg.  As more fully delineated hereinafter, had the infection been properly diagnosed, treated and cared for, the

**McLUSKEY, McDONALD & HUGHES, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 670-2020 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

resulting infection would have been cured and Howard would not have lost his leg. The medical malpractice forming the basis of this lawsuit resulted in substantial permanent injuries and disabilities, and all conduct related occurred in Miami-Dade County, Florida.

6. Venue is proper under 28 U.S.C. § 1402(b) in that the acts or omissions forming the basis of the claims related to this case all occurred in Miami-Dade County, Florida, and within the Southern District of Florida.

7. This lawsuit has been timely filed in that Plaintiff, Howard, timely served notice of his claim on the Office of Chief Counsel, U.S. Department Of Veterans Affairs; the Office of Chief Counsel, Florida Department of Veterans Affairs; Secretary Robert McDonald, U.S. Department of Veterans Affairs; Risk Management Department, Claims Department, Federal Tort Claims Act, U.S. Department of Veterans Affairs; U.S. Department of Veterans Affairs, VA, HealthCare, Miami VA Healthcare System, Claim Department for Medical Malpractice, Claims Per Federal Tort Claims Act; and Catherine Mitrano, Office of Chief Counsel, Florida Department of Veterans Affairs, less than two years after the incident forming the basis of this lawsuit. (See Exhibit 1 attached hereto, including the October 7, 2016 letter with all attachments thereto).

8. By letter dated October 21, 2016, the Department of Veterans Affairs, through its office of Chief Counsel, confirmed receipt of Plaintiff's notice of claim and assumed responsibility for the processing of the claim. More than six (6) months has now elapsed and Defendant has failed to either accept or reject the claim. Pursuant to 28 U.S.C. § 2675, the failure of an agency to make a final disposition of a claim within six months after it is filed is deemed a final denial of the claim. As such, this lawsuit has

- 3 -

**McLUSKEY, McDONALD & HUGHES, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 670-2020 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

now been filed in accordance with the Federal Tort Claims Act and all conditions precedent have been fully satisfied.

## **THE PARTIES**

9.      At all times related hereto, Plaintiff, Howard, was a patient at Defendant's agency, the U.S. Dept. of Veterans Affairs, and received treatment at the medical facility and hospital located in Miami-Dade County, Florida.

10.     At all times related hereto, the United States, through its agency, the U.S. Dept. of Veterans Affairs, operated a Veterans Affairs Medical Center and Hospital located at 1201 N.W. 16th Street, Miami, FL 33125.  In this regard, the U.S. Dept. of Veterans Affairs employs doctors, nurses, health care employees and subcontractor agents in Miami to render medical services and to provide care and treatment to patients, including Plaintiff, Howard.

11.     At all times relevant to this Complaint, the U.S. Dept. of Veterans Affairs held itself out to provide reasonable medical care and treatment at its VA facilities in Miami with respect to healthcare services and to provide such services through its employed doctors, nurses, health care workers and/or other subcontractor agents as it pertains to Plaintiff in Miami, Florida.

12.     At all times relevant to this Complaint, the directors, officers, operators, administrators, employees, agents, doctors, nurses, health care workers, other subcontractor agents and staff at the Miami VA Medical Center were employed by and/or acting on behalf of Defendant.  Furthermore, Defendant is vicariously responsible for the negligent acts of its employees and agents under the doctrine of *respondeat superior* and by virtue of its direct negligence in failing to have in place

- 4 -

**McLUSKEY, McDONALD & HUGHES, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 670-2020 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

proper procedures, policies and standards of care to assure Howard received proper and reasonable medical treatment.

### FACTUAL ALLEGATIONS REGARDING THE MALPRACTICE CLAIM

13.     On November 2, 2014, Mr. Howard, a veteran of the United States armed forces, went to the Veterans Affairs Hospital located at 1201 N.W. 16th Street, Miami, Florida, complaining of his left foot being swollen and painful.  He was seen in the Emergency Department and released, being told by the medical care providers at the hospital to see podiatry the next day.

14.     The next day, on November 3, 2014, Mr. Howard reported to the podiatry department at the Department of Veterans Affairs Hospital and health care complex and complained of not being able to walk and having substantial pain and discomfort in his leg.  He was told by podiatry that he would be fine and was sent home.

15.     Over the next month and a half, Mr. Howard continued to actively seek medical care from the Department of Veterans Affairs Hospital and health care complex and the various health care professionals employed therein.  Unfortunately, Mr. Howard's real medical condition was misdiagnosed multiple times.  In this regard, Plaintiff was first incorrectly diagnosed as having "gout" (his uric acid was normal – it could not have been gout), then diagnosed as "likely deep vein thrombosis" (he showed no signs of such and the medical tests showed no clots), then he received a working diagnosis as possible "Charcot neuroarthropathy" (clearly inapplicable given the progressive symptoms exhibited by the patient and the failure of Charcot to be seen on simple x-rays performed when Howard was initially seen in the ER.)

**McLUSKEY, McDONALD & HUGHES, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 670-2020 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

16. Throughout the time related to this case, the medical providers employed by Defendant failed to timely and properly order and then administer diagnostic testing, which, if properly ordered, would have shown Mr. Howard's true medical pathology – a bone progressing infection. This medical condition could have been easily diagnosed and timely treated had Mr. Howard received proper diagnosis, treatment and medical care by Defendant. Moreover, had such proper care and treatment been provided, Mr. Howard's bone infection would have been easily resolved without resulting in the loss of his left leg.

17. Mr. Howard was again seen in the Emergency Department on November 18, 2014, complaining of worsening pain and swelling. During this visit, Mr. Howard was ordered to have a magnetic resonance imaging study (MRI) performed. However, when Mr. Howard presented to the department responsible for performing the MRI on November 18, he was told that the department was too busy. (The records actually reveal the entry as "Tech refused to do the study because of a backlog of cases.")

18. Although Mr. Howard had been ordered to undergo an MRI and despite the fact that he had then been seen at the VA Hospital multiple times for progressing symptoms – all suggesting an ongoing worsening bone infection (he had progressive pain, swelling and significant ongoing advancing symptoms since November 2, 2014, along with substantial limitation when walking) – he was not given the much-needed and ordered MRI. Instead, and without any medical explanation found in the records, a CT scan – without contrast – was then administered. Incredibly, after undergoing the CT scan, the reporting radiologist actually stated that the CT revealed a "significant abnormality" and medical attention was then "needed." However, despite the findings

- 6 -

McLUSKEY, McDONALD & HUGHES, P.A.
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 670-2020 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

on CT and the increasing symptomatology, no medical follow-up occurred.  (In fact, at all times related hereto, Mr. Howard showed clear signs of a substantial osteomyelitis bone infection existing).  Instead of treating Mr. Howard, he was given an appointment to the have the MRI performed some **ten (10) days later** – on November 28, 2014.

19. Because of the terrible pain Mr. Howard was suffering, he could not wait until November 28 for his appointment, and instead returned to the VA on November 24, 2014, again complaining of tremendous pain (10 out of 10 on pain scale) with swelling and induration.

20. Despite his continued worsening condition and the emergent condition that was clearly then existing, Mr. Howard was again turned away from the Hospital without receiving the much needed MRI.  He was again told that he "just needed to wait and return on the 28th."

21. Although Mr. Howard did not receive the MRI on November 24, he was examined that day.  Once again, his medical condition was misdiagnosed this time as Charcot neuroarthropathy.  Mr. Howard was then given a compression stocking to wear (for the wrongly diagnosed Charcot neuroarthropathy), which under the then existing circumstances was wholly medically inappropriate.

22. At all times material hereto, the diagnosis of Charcot neuroarthropathy was wholly incorrect as such a diagnosis brings with it symptoms of loss of sensation and signs of a fracture – symptoms Howard never had and is a condition that was fully ruled out weeks earlier when Plaintiff had an x-ray in the ER department. In fact, through this time period, all of the diagnoses made were incorrect.  Of course, a simple

- 7 -

**McLUSKEY, McDONALD & HUGHES, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 670-2020 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

MRI would have shown the true state of affairs – that Mr. Howard had been suffering from a bone infection.

23. Finally, on November 28, 2014, Mr. Howard underwent the MRI he should have earlier undergone.

24. Incredibly, despite the medical history pertinent to Mr. Howard's care (progressive pain, swelling, substantial limitation when walking, multiple incorrect diagnoses and significant ongoing advancing symptoms since November 2, 2014), the delay in correctly diagnosing the condition was made worse by the fact that the VA did not have the MRI read until 3 days **after** it actually occurred.

25. Not surprisingly, when the MRI was finally interpreted, Mr. Howard was finally diagnosed with a bone infection.

26. Unfortunately, the obvious and simple diagnosis of a bone infection came much too late as the infection had been allowed to significantly progress and worsen. Ultimately, on December 18, 2014, Mr. Howard's left lower leg was amputated below the knee due to the progression of the bone infection.

27. Under the circumstances of this case, Mr. Howard's condition should have been diagnosed and treated long before it was finally detected. Had such occurred, Mr. Howard's infection would have been cured and he would not have sustained the loss of his leg.

## CAUSE OF ACTION – MEDICAL NEGLIGENCE

28. Plaintiff, Howard, realleges and reincorporates each and every allegation above as if fully stated herein.

- 8 -

**McLUSKEY, McDONALD & HUGHES, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 670-2020 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

29. At all times related hereto, Defendant had a duty to provide ordinary and reasonable care, exercising that standard and degree of medical treatment required of similar health care providers in the local community. In this regard, the doctors, nurses, health care providers and other agent subcontractors employed by Defendant committed actionable negligence in treating Howard by failing to diagnosis his true medical condition and by not timely treating such condition. Moreover, at all times related to this Complaint, Defendant had the duty to hire competent medical administrators, doctors, employees, nurses, subcontractor agents and staff in order to meet its standards of care for patients, including Howard. The medical administrators, doctors, employees, nurses, subcontractor agents and staff committed actionable negligence by not providing that level of care consistent with the standards for medical facilities in Miami-Dade County, Florida. Indeed, Defendant knew and/or had reason to know (via its agents, employees, physicians, nurses, medical providers and other agents or employees) of Howard's true medical condition and that he was in need of medical care and treatment. Instead of fulfilling its duties, Defendant committed actionable negligence by one or more of the following affirmative acts of commission or omission:

    A. Failing to appropriately administer, supervise and operate its VA facility with reasonable care under the circumstances;

    B. Failing to adopt and implement appropriate policies, protocols and procedures so that the United States, through its agency, the U.S. Dept. of Veterans Affairs, would provide appropriate, proper and timely medical care, diagnosis and treatment in a timely and reasonable basis;

C. Allowing an ongoing infection to continue unabated and by failing to appropriately have in place proper standards necessary to recognize that such condition existed and to properly treat the condition;

D. Failing to properly order and assure that proper diagnostic testing was performed in order to treat a then-existing condition experienced by Howard when the symptoms were present and/or the symptoms related thereto were easily detectible;

E. Failing to properly familiarize its medical staff with the ongoing medical conditions related to Howard's diagnosis, care and treatment and by refusing to properly care for him when under all circumstances such should have occurred;

F. Failing to order timely and proper diagnostic testing and/or other appropriate substantive medical testing to diagnose the medical condition;

G. Failing to order appropriate administration of antibiotics and other medications;

H. Failing to order appropriate diagnostic procedures;

I. Failing to adequately and appropriately instruct its doctors, nurses and other health care professional concerning the need for care and treatment of ongoing bone infections;

J. Failing to order appropriate consultations with appropriate medical specialists, including but not limited to infectious disease physicians on a timely basis; and by

- 10 -

**McLUSKEY, McDONALD & HUGHES, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 670-2020 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

      K.    Otherwise failing to properly diagnose, treat and care for Mr. Howard.

30.    At all material times hereto, had the United States, through its agency, U.S. Dept. of Veterans Affairs, used reasonable care under the circumstances, Howard would not have sustained permanent medical disabilities and resulting pain and suffering.

31.    The negligence of Defendant, as stated in this Complaint, was either known or should have been known by Defendant, United States, through its agency, U.S. Dept. of Veterans Affairs, had it used reasonable care under the circumstances.

32.    As a direct result of Defendant's negligence, Howard was permanently injured in and about his body and sustained the following damages:

      A.    Disability;

      B.    Disfigurement;

      C.    Pain and suffering;

      D.    Inconvenience;

      E.    Loss of ability and capacity for the enjoyment of life;

      F.    Extensive and expensive need for past and future medical treatment;

      G.    Medical nursing care and treatment;

      H.    Lost wages; and

      I.    Earning capacity, both past and future.

These losses are either permanent or continuing in nature and Plaintiff, Howard, will continue to suffer such losses in the future.

**McLUSKEY, McDONALD & HUGHES, P.A.**
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 670-2020 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com

WHEREFORE, Plaintiff, Howard, demands judgment for damages against United States, through its agency, U.S. Dept. of Veterans Affairs, in accordance with the demands made in his Standard Form 95, as attached hereto and included herein, exclusive of interest and costs which he prays for in addition thereto.

**GOOD FAITH REVIEW OF MATTER**

33.   This will certify that the undersigned counsel has conducted a good-faith review of this matter as it pertains to the United States, through its Department of Veterans Affairs Hospital and its applicable health care providers, and certifies that he has obtained *bona fide* medical opinions confirming that reasonable and good faith grounds exist to believe malpractice has occurred in the care of treatment of Mr. Howard.

Dated:  May 4, 2017

/s/ *John W. McLuskey*
John W. McLuskey
Florida Bar No.: 331171
McLuskey, McDonald & Hughes, P.A.
Attorneys for Plaintiff
The Barrister Building
8821 S.W. 69th Court
Miami, FL 33156
eservice@mmlawmiami.com
jmcl@mmlawmiami.com'
mrodriguez@mmlawmiami.com
fhudson@mmlawmiami.com
(305) 670-2020 Telephone
(305) 662-6164 Facsimile

- 12 -

McLUSKEY, McDONALD & HUGHES, P.A.
THE BARRISTER BUILDING • 8821 S.W. 69TH COURT • MIAMI, FLORIDA 33156
TELEPHONE (305) 670-2020 • FACSIMILE (305) 662-6164 • www.mmlawmiami.com